04-1919-CBS

## AFFIDAVIT

I, Brendan Hickey, having been duly sworn, hereby depose and state:

1.    I am a Special Agent ("SA") of the Bureau of Alcohol, Tobacco and Firearms & Explosives ("ATF"), assigned to the Boston, Massachusetts Field Division, and have been so employed for approximately four years.  As an ATF Special Agent, I am responsible for conducting investigations of federal firearms, arson and explosive laws.  Prior to joining ATF, I worked as a Special Agent with the United States Immigration & Naturalization Service ("INS") for a period of approximately five years, as a United States Border Patrol Agent for a period of two years, and in local law enforcement, for approximately one and a half years. As a result of my experience, I have been involved in numerous investigations relating to narcotics and firearms.

2.    The statements contained in this affidavit are based on my own investigation and on information provided to me by other ATF agents and local law enforcement authorities.

3.    I make this affidavit in support of a criminal complaint charging an individual named John FORTES, born in 1974 ("FORTES"), with possession of cocaine with the intent to distribute it, in violation of Title 21, United States Code, Section 841(a)(1), and possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

4.    Over the past several months, I have had a series of

conversations with a cooperating witness ("CW") who informed me that FORTES routinely sells cocaine in the City of New Bedford. The CW told me that FORTES has resided at 68 South Street, New Bedford, in an apartment complex known as the Verdean Gardens for the last several months. The CW told me that FORTES lived in that apartment with his girlfriend, Emanuela Degraca, a/k/a Emanuela Alves.

5. I am aware that the CW has admitted to using narcotics in the past, although not in the last six months. I am also aware that the CW has received a sum of money for information the CW has provided to law enforcement officials, and has an open criminal case for which the CW hopes to receive favorable treatment, but has received no promises or assurances.

6. On or about June 17, 2004, Sgt. Paul Oliveira of the New Bedford Police Department contacted Sheila Vassal, the property manager for the Verdean Gardens Apartments. Ms. Vassal told Sgt. Oliveira that Emanuela Degraca is the tenant in Apartment 10 at 68 South Street. She told Sgt. Oliveira that she knows John FORTES and knows that he lives in that apartment with Ms. Degraca and an infant. Ms. Vassal also told Sgt. Oliveira that FORTES's mother lives in the next door apartment, Apartment 11 at 68 South Street.

7. Sgt. Oliveira checked the records maintained by the Massachusetts Registry of Motor Vehicles ("RMV") and learned that

2

the address FORTES provided most recently to the RMV is 68 South Street, Apartment 11, New Bedford, Massachusetts.

8.   The CW told me that he/she has purchased cocaine from FORTES on several occasions during the last few months.   The CW told me that he/she has also observed other individuals purchase narcotics from FORTES over the last few months.

9.   On May 27, 2004, the CW made a controlled purchase of approximately 29 grams of cocaine from FORTES.   At my direction, the CW telephoned FORTES at 508-294-048 and ordered an ounce of cocaine. I witnessed telephone conversations between the CW and FORTES and overheard parts of those conversations.   The CW told me that he/she has contacted FORTES and arranged to purchase narcotics through this telephone number for nearly one year.

10.   FORTES agreed to meet the CW on Purchase Street in New Bedford in order to sell narcotics to the CW.   ATF SA David Oliver searched the CW and equipped him/her with electronic monitoring and recording equipment.   I gave the CW $1400.00 in U.S. Currency and watched the CW as he/she left my car on foot. SA Croke and I then followed the CW to State Street where we maintained visual surveillance of the CW until he/she arrived at Purchase Street.   Once the CW arrived at Purchase Street, other surveillance units then maintained visual surveillance of the CW. The CW went to the corner of Purchase Street and Campbell Street where FORTES had agreed to meet the CW.

3

11.    Moments after the CW arrived at the location, he/she was heard on the monitoring device stating that FORTES was "two minutes out." Moments later, surveillance units saw a Silver Lexus bearing Massachusetts registration 65ML05, pull around the corner from where the CW was standing.  The CW was seen walking towards that car, and was heard seconds later conducting a transaction with a male that the CW referred to as "John". During that conversation, the CW asked FORTES if he could obtain ammunition for the CW.  FORTES said that it was possible that he could obtain ammunition for the CW at a later date.  Moments later the CW walked away from the Lexus, and the Lexus departed. Both New Bedford Police Det. Sgt. Paul Oliveira and Detective David Conceicao observed the Lexus as it drove away and confirmed that FORTES was the driver of the vehicle.

12.    After the transaction was completed, the surveillance units maintained visual surveillance of the CW until he returned to the prearranged location where he/she was picked up.  The CW gave me a clear plastic bag containing suspected cocaine that he/she had received from FORTES.  I searched the CW for currency or contraband with negative results.  I gave the bag of suspected crack cocaine to New Bedford Police Detective David Conceicao who weighed the substance, found it to be approximately 29 grams, and placed it into evidence at the New Bedford Police Department. Sgt. Oliveira informed me that he field tested the substance I

4

received from the CW and found that it tested positive for the presence of cocaine. I am aware that the Massachusetts Executive Office of Health and Human Services Dept. of Public health State Laboratory Institute (state laboratory) in Boston has examined the substance and confirmed that it is in fact 28.12 grams of cocaine.

13. I asked the CW to describe the transaction with FORTES and he told me the following. The CW said that FORTES was driving the Lexus that we observed. The CW said that he/she approached the car and purchased the cocaine directly from FORTES for $1400.

14. On June 2, 2004, the CW purchased approximately 26 grams of cocaine and six rounds of 9mm ammunition from FORTES. At my request, the CW called FORTES at 508-294-4048. I witnessed the telephone conversations between the CW and FORTES and overheard parts of those conversations.

15. FORTES agreed to meet the CW on Campbell Street in New Bedford in order to sell narcotics to the CW. I searched the CW prior to leaving a predetermined meeting location. I also outfitted the CW with electronic monitoring and recording equipment. I gave the CW $1500.00 in U.S. Currency and watched the CW as he/she left my car on foot. SA Croke and I then followed the CW to Campbell Street, where we maintained surveillance of the CW until he/she came into view of other

surveillance units, who then maintained visual surveillance of the CW.

16.    Moments after the CW arrived at the location, he/she was heard on the monitoring devices stating that FORTES had called the CW on his/her cell phone to say that he would be there in ten minutes.   Approximately fifteen minutes later, surveillance units saw a white van, bearing Massachusetts registration 50BY17, drive down Campbell Street and stop in front of where the CW was standing.   The CW was seen walking to the driver's side window of that vehicle, leaning in that window, and walking away seconds later.

17.    I was listening to the audio monitoring equipment, and was able to hear the transaction take place.   I also heard FORTES tell the CW that he needed to go to a different location to pick up the ammunition.   FORTES instructed the CW to wait for him to return.

18.    FORTES then drove away but he returned several minutes later.   The surveillance units saw FORTES drive down Campbell Street and stop in front of the CW.   The CW again leaned into the driver's window.   Seconds later, FORTES departed.

19.    The CW then walked down Campbell Street while surveillance units maintained visual surveillance.   SA Croke and I then followed the CW from that area to a prearranged location where he/she was picked up.   The CW gave me a clear plastic bag

6

containing suspected cocaine, and a clear plastic bag containing six rounds of Winchester, 9mm Luger ammunition. The CI also returned $40.00 to me from the $1500.00 that I had given to him/her earlier. I then searched the CW for other U.S. currency or contraband with negative results. I gave the bag of suspected crack cocaine to Detective David Concacio who weighed it and found it to weigh approximately 26 grams and placed it into evidence at the New Bedford Police Department. Sgt. Paul Oliveira of the New Bedford Police Department told me that he conducted a field test of the substance I received from the CW and it tested positive for the presence of cocaine.

20.   I asked the CW to describe the transaction and he told me the following. The CW told me that FORTES was driving the white van we had observed and that he/she purchased the cocaine directly from John FORTES for $1400.00. The CW told me that after he/she purchased the cocaine from FORTES, FORTES said that he needed to pick up the ammunition from another location. FORTES then drove away and returned a short time later and gave a small bag containing six live rounds of ammunition to the CW in return for $60.

21.   On June 14, 2004, ATF SA Angelo Thurman determined that the ammunition that FORTES sold to the CW was Winchester, 9mm Luger ammunition. SA Thurman also determined that the ammunition was not manufactured in the Commonwealth of

7

Massachusetts and therefore traveled in interstate commerce prior to the sale from FORTES.

22.  I have reviewed the records maintained the Massachusetts Criminal History Board concerning John FORTES, born in 1974, and found that FORTES was convicted of Possession of a Class B Controlled Substance With Intent to Distribute in the New Bedford District Court on July 7, 1998.  I know from my training and experience that this offense is a felony under Massachusetts law and is punishable by a term of imprisonment in excess of one year.

23.  Based upon all of the foregoing, there is probable cause to believe that on or about May 27, 2004 and June 2, 2004, in New Bedford, Massachusetts, John FORTES possessed cocaine with the intent to distribute it, in violation of 21 United States Code § 841 (a) (Possession with Intent to Distribute a Controlled Substance) and that Fortes, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did possess ammunition on June 2, 2004 in New Bedford,

Massachusetts, in violation of 18 United States Code § 922(g)(1)

(felon in possession of ammunition).


    I certify that the foregoing is true and correct.

Executed at Boston, Massachusetts, this 22 day of June, 2004.

                    BRENDAN HICKEY
                    Special Agent, ATF



    Subscribed and sworn before me this 22 day of June, 2004, in
Boston, Massachusetts.

                    CHARLES B. SWARTWOOD
                    United States Magistrate Judge

9