**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
UNITED STATES OF AMERICA      )
                              )
        v.                    )
                              )   CR. NO. 04-10196-GAO
JOHN FORTES                   )
                              )
```

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO SUPPRESS EVIDENCE**

The defendant moves to suppress evidence found in his apartment when officers executed a search warrant issued by U.S. Magistrate Judge Charles B. Swartwood III. The defendant concedes the search warrant affidavit provided probable cause to believe he had made three controlled sales of cocaine and one sale of ammunition to a cooperating witness, but he argues that the affidavit failed to show a nexus between his drug dealing and his apartment because the sales occurred at places other than his apartment. As discussed below, however, the affidavit set forth sufficient facts to establish the nexus element of probable cause. It directly connected Fortes's drug dealing to the apartment no. 10 at 68 South Street through the last transaction and it presented facts from which the magistrate judge could reasonably infer that evidence relating to Fortes's drug and firearms related dealing would likely be found in the apartment. The Court should therefore deny the defendant's motion to suppress.

**Relevant Facts**

The relevant facts are not in dispute and are set forth in greater detail in the search warrant affidavit, attached hereto as Exhibit One.

The affiant, ATF Special Agent Brendan Hickey, received information from a CW over a several month period that the defendant was selling cocaine in New Bedford.  SA Hickey was able to confirm through investigation that the defendant shared an apartment with his girlfriend at 68 South Street, Apt. 10, in New Bedford.  Between May 27 to June 22, 2004, Hickey and others used the CW to conduct three controlled buys of cocaine from the defendant.  In each case, the CW called the defendant and the two met at an agreed upon spot to consummate the deal.

On May 27, 2004, the defendant traveled to the meeting spot in a Lexus owned by his girlfriend, and registered to her at 68 South Street, Apt. 10.  The defendant sold the CW approximately 28 grams of cocaine for $1,400.

On June 2, 2004, the defendant sold the CW about 26 grams of cocaine for $1,400, and then returned a short time later and sold the CW several rounds of ammunition for $60.00.[1]

On June 22, 2004, the defendant's apartment was under surveillance as the CW called the defendant and asked to purchase

---

[1]To be clear, the search warrant affidavit does not reflect the amount the CW paid for the cocaine, but the complaint-affidavit, submitted to Magistrate Judge Swartwood at the same time, did.

an ounce of cocaine.  Immediately after the call, the defendant arrived at his apartment building and entered Apt. 10.  He left shortly thereafter and met with the CW and sold him an ounce of cocaine for $1,400.  The defendant then returned to his apartment.

ATF SA Brendan Hickey sought a warrant to search the apartment shortly following this last transaction.  In addition to setting forth the foregoing facts, SA Hickey also averred that it was common for drug dealers to keep drugs, drug dealing paraphernalia and other evidence of their dealing in the place where they reside.  Magistrate Judge Swartwood issued the warrant the same day.  In executing the warrant on June 24, 2004, officers found a firearm among other things.  The defendant subsequently admitted that the firearm belonged to him.

**Argument**

**THERE WAS PROBABLE CAUSE TO BELIEVE CONTRABAND WOULD BE FOUND IN THE DEFENDANT'S APARTMENT.**

A.    The Legal Framework

A magistrate presented with a request for a search warrant should issue the same if the government has demonstrated probable cause to believe that (1) a particular person had committed a crime (the "commission" element), and (2) enumerated evidence of the offense will be found at the place to be searched (the "nexus" element).  United States v. Beckett, 321 F.3d 26, 31 (1st Cir. 2003)(citing United States v. Zayas-Diaz, 95 F.3d 105, 110-

3

111 (1st Cir. 1996)).  In determining whether an affidavit establishes probable cause to search a particular place, a court must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit[,]. . . . there is a fair probability that contraband or evidence of a crime will be found in [that] particular place." Illinois v. Gates, 462 U.S. 213, 238-239.  Where the magistrate concludes that the government has met its burden and issues the warrant, a reviewing court should "grant great deference to the magistrate's evaluation of the supporting affidavit," United States v. Procopio, 88 F. 3d 21, 25 (1st Cir. 1996) (internal quotation marks and citation omitted), reversing "only if there is no 'substantial basis for . . . conclud[ing]' that probable cause existed[,]" id., quoting Gates, 462 U.S. 213, 238-239 (1983). See United States v. Zayas-Diaz, 95 F.3d 105, 111 ( 1st Cir. 1996) (in "doubtful or marginal case," Court will "defer[] to an issuing magistrate's 'probable cause' determination.")

     B.   The affidavit established probable cause to believe that contraband would be found in Fortes's apartment.

Fortes contends that the affidavit failed to establish a sufficient nexus between his conceded drug activity and his apartment, and thus, the search warrant was not supported by probable cause that the items sought would be found in his apartment.  However, the affidavit relied on three specific factors to support the nexus: probable cause that Fortes was a

4

drug dealer; probable cause that he lived in Apt. No. 10 at 68
South Street; and Hickey's observations of Fortes stopping by his
apartment just before going to complete the last transaction and
then reentering the apartment after the deal was completed,
coupled with Hickey's own opinion that drug dealers keep
documents and other items related to drug dealing in their homes.

     SA Hickey's affidavit easily presented sufficient facts from
which the magistrate judge could draw the reasonable inference
that incriminating evidence would likely be found at Fortes's
apartment.  See United States v. Feliz, 182 F.3d 82, 87 (1st Cir.
1999).  First, the affidavit provided information connecting
Fortes's drug-dealing to apartment 10 at 68 South Street.  In the
first transaction, Fortes drove a Lexus registered to that
address.  In the last transaction, Hickey personally observed
Fortes arrive at and enter his apartment moments after arranging
a drug deal with the CW by telephone.  Fortes left the apartment,
completed the drug transaction, and then returned to the
apartment.  Surely the magistrate could have inferred from this
last fact alone that Fortes kept narcotics in his apartment, and
stopped there to retrieve them on his way to the last
transaction.  See Feliz, 182 F.3d at 88 (noting that defendant's
residence would as a matter of common sense be "a likely place to
seek to find incriminating items"); see also United States v.
Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986)("In the case of

drug dealers, evidence is likely to be found where the dealers live"); United States v. McClellan, 165 F.3d 535, 546 (7th Cir. 1999)(same); United States v. Thomas, 989 F.2d 1252, 1255 (D.C. Cir. 1993)(per curiam)(remote drug sales can provide probable cause to search a suspect's residence).

Second, the affidavit established that Fortes had received $4,200 in cash from the CW in their three drug transactions. It was reasonable to suppose that Fortes kept the money he collected and used in his business -- since Fortes clearly had to purchase the drugs he sold -- in a "safe yet accessible place." See Feliz, 182 F.3d at 87-88. It was also reasonable to suppose that that safe place was Fortes's home at 68 South Street, Apt. No. 10.

Third, and as the First Circuit has recognized, it was also a reasonable inference that a drug trafficker like Fortes might maintain documents showing customers' and suppliers' names and telephone numbers, and related accounting information, such as monies paid and collected. See Feliz, 182 F.3d at 87. Even assuming the affidavit did not establish that Fortes was a large-scale, long-time drug dealer, that in no way undermines the inference that he likely kept some records of his drug transactions. See United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997) ("Probability is the touchstone" and common sense sets the standard for probable cause). The affidavit

established that Fortes conducted at least three drug
transactions and one sale of ammunition over an approximate 4
week period.  At no time did Fortes indicate that he had any
problems supplying the drugs; in fact, Fortes conducted the last
transaction within minutes of the CW's call requesting cocaine.
These facts suggest that Fortes had a ready supply of cocaine and
it was not unreasonable to infer that Fortes would maintain the
supply in a safe place such as his apartment.

   Fourth, the affidavit established that Fortes lived at Apt.
No. 10 at 68 South Street, and connected his drug-dealing only to
that apartment and no other residence or building, including, in
particular, that of his mother at Apt. No 11.  Further, Fortes
was often seen driving the Lexus, and used it in the first
transaction, and the Lexus was registered to his girlfriend who
lived with him at Apt. No. 10 at 68 South Street.

   Finally, the affidavit explained SA Hickey's training and
experience in conducting drug investigations.  In addition to
describing SA Hickey's law enforcement background and current
duties with the ATF, the affidavit recounted that Hickey had
participated in numerous narcotics and firearms investigations
and was familiar with the habits of those who dealt such items.
The affidavit also stated that based on his training and
experience, SA Hickey knew that drug traffickers must store large
sums of cash outside the banking system, frequently maintain

books and other documents relating to their drug business,
commonly keep addresses and telephone numbers reflecting
customers' and other criminal associates' names, and keep
paraphernalia for distributing drugs.  The affidavit ended with
Hickey's conclusion that based upon his training, experience, and
investigative information, there was probable cause to believe
that the items sought would be found in Fortes's apartment at 68
South Street, Apt. 10.

    The magistrate judge's decision to issue the warrant in
light of the foregoing was entirely proper.  "[O]fficers are
entitled to draw reasonable inferences from [] facts in light of
their knowledge of the area and their prior experience  . . . ."
United States v. Ortiz, 422 U.S. 891, 897 (1975).  Furthermore,
the magistrate judge is "entitled to accord [the officer's
information] some weight." Feliz, 182 F.3d at 87; see also United
States v. Barnard, 299 F.3d 90, 95 (1st Cir. 2002) (magistrate
can "credit the law enforcement affiant's experience and
pertinent expertise in evaluating the authenticity of the
informant's description of the target's modus operandi.")
(citation omitted).  The magistrate judge here properly credited
Hickey's observations, experience and expertise in evaluating the
affidavit for probable cause.  Again, a probable cause
determination is fundamentally a fact-specific inquiry.
Khounsavanh, 113 F.3d at 285.  The First Circuit has recognized

that the nexus between the objects to be seized and the premises searched "'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime].'" <u>Feliz</u>, 182 F.3d at 88, quoting United States v. Charest, 602 F.2d 1015, 1017 (1st Cir. 1979). The "totality of circumstances" here -- the detailed investigative information in the affidavit, the inferences that could reasonably be drawn from that information, and SA Hickey's opinion, based upon his experience, that Fortes would likely have narcotics, firearms related items, proceeds, documents, and paraphernalia from his drug-trafficking business in his home -- demonstrated probable cause to believe that there was a "fair probability" that the items sought would be found in Fortes's apartment. The magistrate judge properly concluded that there was probable cause for the search.

**<u>Conclusion</u>**

For the foregoing reasons, the Court should deny the defendant's motion to suppress evidence. Further, because the defendant does not dispute the facts but merely what reasonable inferences could be drawn from them, no evidentiary hearing is needed.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

BY:  /s/Donald L. Cabell
     Donald L. Cabell
     Assistant U.S. Attorney
     One Courthouse Way, Suite 9200
     Boston, MA 02210
     (617) 748-3105