# EXHIBIT 1

AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

DISTRICT OF  MASSACHUSETTS

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Apartment No. 10 at 68 South Street, New Bedford, MA, a basement level apartment with the number "10" on it in a multi-story brick building.

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 04-1795 CBS

I  Brendan Hickey  being duly sworn depose and say:

I am a(n)  ATF Special Agent  and have reason to believe
Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

Apartment No. 10 at 68 South Street, New Bedford, MA, a basement level unit with the number "10" on the door, in a three and a half story brick building, with a sign in the front reading "Verdean Gardens."

in the _____  District of  Massachusetts

there is now concealed a certain person or property, namely (describe the person or property to be seized)
See Schedule A attached,

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
property that constitutes evidence of a criminal offense; or contraband, the fruits of crime, or things otherwise criminally possessed; or property which is, has been or could be used as the means of committing a criminal offense

concerning a violation of Title  21  United States code, Section(s)  841(a)(1), and 18 U.S.C. s. 922(g) .
The facts to support a finding of Probable Cause are as follows:
See attached affidavit of ATF Special Agent Brendan Hickey

Continued on the attached sheet and made a part hereof.    ☒ Yes  ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

6-22-04                  at   Boston, Massachusetts
Date                          City and State

CHARLES B. SWARTWOOD III, U. S. Magistrate Judge
Name and Title of Judicial Officer       Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## **AFFIDAVIT**

I, Brendan Hickey, having been duly sworn, hereby depose and state:

1. I am a Special Agent ("SA") of the Bureau of Alcohol, Tobacco and Firearms & Explosives ("ATF"), assigned to the Boston, Massachusetts Field Division, and have been so employed for approximately four years. As an ATF Special Agent, I am responsible for conducting investigations of federal firearms, arson and explosive laws. Prior to joining ATF, I worked as a Special Agent with the United States Immigration & Naturalization Service ("INS") for a period of approximately five years, as a United States Border Patrol Agent for a period of two years, and in local law enforcement, for approximately one and a half years. As a result of my experience, I have been involved in numerous investigations relating to narcotics and firearms.

2. The statements contained in this affidavit are based on my own investigation and on information provided to me by other ATF agents and local law enforcement authorities.

3. This Affidavit is submitted in support of an application for a warrant to search the residence of Emanuela Degraca, a/k/a, Emanuela Alves at 68 South Street, Apartment 10 in the Verdean Gardens apartment complex, New Bedford, Massachusetts.

4. Over the past several months, I have had a series of conversations with a cooperating witness ("CW") who informed me

that FORTES routinely sells cocaine in the City of New Bedford. The CW has past convictions for larceny, armed robbery, drug distribution and intimidation of a witness. He/she has a history of use of narcotics, and he/she receives compensation and potential consideration on open cases for the information that he/she provides to law enforcement.

5. The CW has made three controlled purchases of cocaine from FORTES. On May 27, 2004, the CW contacted FORTES using the telephone number he has used in the past to contact FORTES in order to purchase narcotics, 508-294-4048. FORTES agreed to meet the CW at the intersection of Purchase Street and Campbell Street in New Bedford. FORTES drove a silver Lexus, bearing MA registration 65ML05, to the area near the corner of Purchase Street and Campbell Street in New Bedford. The CW met FORTES at that location and purchased approximately 29 grams of a substance that tested positive in a field test for the presence of cocaine from FORTES for $1400. The CW asked FORTES if he could obtain ammunition for the CW. FORTES said he might be able to obtain some ammunition at a later date. The Massachusetts Executive Office of Health and Human Services Dept. of Public health State Laboratory Institute (state laboratory) in Boston has examined the substance and confirmed that it is in fact 28.12 grams of cocaine.

6.  On June 2, 2004, the CW contacted FORTES again using that same telephone number and arranged to purchase narcotics from FORTES. FORTES agreed to meet the CW on Campbell Street in New Bedford. The CW met FORTES and purchased approximately 26 grams of a substance that was field tested and tested positive for the presence of cocaine. FORTES drove a white van, bearing MA registration 50BY17, to the area of Campbell Street. The CW asked FORTES again if he could obtain ammunition. FORTES told him/her that he could but that he would have to travel to another location to pick it up. FORTES left and returned a short time later and sold six rounds of 9mm ammunition to the CW in return for $60.

7.  On June 22, 2004, the CW contacted FORTES again using that same telephone number and arranged to purchase an ounce of cocaine from FORTES for $1400.00. Moments after the call, I observed FORTES enter 68 South Street and enter Apartment No. 10. He left shortly thereafter and met with the CW, where other officers observed FORTES sell the CW an ounce of a substance which field testing subsequently showed to be cocaine. FORTES then returned to 68 South Street and reentered Apartment No. 10.

9.  The CW told me that FORTES has resided at the home of his girlfriend, Emanuela Degraca, a/k/a Emanuela Alves at 68 South Street, New Bedford, for several months. I contacted Sheila Vassal, the property manager of the Verdean Gardens

3

Apartments. Ms. Vassal told me that Emanuela Degraca is listed as the tenant in Apartment 10 at 68 South Street. Ms. Vassal also told me that she knows John FORTES and she knows that he lives at that apartment with Ms. Degraca and an infant. Ms. Vassal told me that FORTES' mother lives in Apartment 11, which is next door to the apartment FORTES and Ms. Degraca share.

9. Sgt. Paul Oliveira of the New Bedford Police Department checked the records of the Massachusetts Registry of Motor Vehicles ("RMV") and learned that the address FORTES listed most recently for his license is 68 South Street, Apartment 11, New Bedford.

10. During the May 27, 2004 drug transaction referred to in paragraph #4, FORTES was driving a silver Lexus bearing MA registration 65ML05. Sgt. Oliveira checked the RMV records and learned that the Lexus is registered to Emanuela Alves Degraca of 68 South Street, Apartment 10, New Bedford. Sgt. Oliveira told me that he has observed that silver Lexus parked near 68 South Street on several occasions within the last 10 days. The CW has also informed me that he/she has witnessed FORTES sell narcotics from the Lexus, or has bought narcotics himself/herself from FORTES, while FORTES drove the Lexus.

11. Both New Bedford Police and ATF surveillance units have seen the aforementioned Lexus and minivan parked at 68 South Street on numerous occasions over the past month.

4

12. Based on my training and experience in connection with firearms investigations, I know that firearms and ammunition are not easily disposed of and that individuals who possess them typically retain them for long periods of time and keep them in their place of dwelling. Based on my training and experience in connection with narcotics investigations, I also know the following to be true:

   a. That drug traffickers often maintain on hand large amounts of United States currency or other negotiable items in order to maintain their ongoing narcotics business and transact the sales of narcotics;

   b. That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, gasoline receipts, money orders, while facilitating the sale of narcotics, and these documents are maintained where the drug trafficker has ready access to them. It is not uncommon that these records are kept and maintained for periods of time, which can exceed several years;

   c. That it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, which gives them ready access to such items and the ability to conceal them from law enforcement authorities;

5

d. That it is common for persons involved in drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the drug traffickers within their residences, businesses or other locations which they maintain dominion and control over, including safety deposit boxes;

e. That drug traffickers commonly maintain addresses and telephone numbers in books and/or papers which reflect names, addresses, and telephone numbers for their associates in the narcotics organization; and

f. That drug traffickers usually keep paraphernalia for packaging, cutting, weighing and distributing the controlled substances; that these items include, but are not limited to, scales, plastic bags, and cutting agents.

13. Based on the foregoing, I have probable cause to believe that evidence of the commission of criminal offenses and contraband, the fruits of crime, and things otherwise criminally possessed, and property designed and intended for use and which

6

is and has been used as the means of committing a criminal offenses, in violation of Title 18, United States Code, Section 922(g)(1), and Title 21, United States Code, Section 841(a)(1) may be found inside Apartment 10 at 68 South Street, New Bedford, Massachusetts, and accordingly seek permission to seize the items listed below and attached hereto as Schedule A.

### Description of Premises

14. The property at 68 South Street, New Bedford, Massachusetts, is a three and one half story brick apartment building. A sign in front of the building reads "Verdean Gardens." Apartment number 10 is located on the basement level. There are six units on that level and each bears the number of the unit on its door. Thus, the number "10" appears on the door of Apartment number 10.

### Items to be Seized

17. The items to be seized include the following:

a. Narcotic drugs and controlled substances, or any residue thereof, drug paraphernalia, scales, measuring devices and weighing devices, narcotics diluting or cutting agents, narcotics packaging materials, plastic wrap, foil, cellophane, jars, plastic bags, containers, or any other items used in the processing of narcotics;

b. Cash;

c. Narcotics or money ledgers, narcotics distribution or customer lists, including but not limited to, pay/owe sheets,

narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

    d.   Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records, and other documents, indicating money which may have been generated from the sale of narcotics.

    e.   Telephone paging devices, beepers, mobile phones, car phones, and other communication devices which evidence participation in a conspiracy to distribute controlled substances.

    f.   Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items, reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking;

    g.   Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks, and certificates of deposit; money counting machines; money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

  h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items, obtained with the proceeds of the sales of controlled substances;

  i. Records, items, and documents reflecting travel for the purpose of participating in narcotics trafficking, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

  j. Indicia of occupancy, residency or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, canceled envelopes and keys and bank account records; and

9

k.  Any firearms, ammunition, or firearms related paraphernalia.

I certify that the foregoing is true and correct.
Executed at Boston, Massachusetts, this 22 day of June, 2004.

*[signature]*
BRENDAN HICKEY
Special Agent, ATF

Subscribed and sworn before me this 22nd day of June, 2004, in Boston, Massachusetts.

*[signature]*
CHARLES B. SWARTWOOD III
United States Magistrate Judge

10

## SCHEDULE "A"

a. Narcotic drugs and controlled substances, or any residue thereof, drug paraphernalia, scales, measuring devices and weighing devices, narcotics diluting or cutting agents, narcotics packaging materials, plastic wrap, foil, cellophane, jars, plastic bags, containers, or any other items used in the processing of narcotics;

b. Cash;

c. Narcotics or money ledgers, narcotics distribution or customer lists, including but not limited to, pay/owe sheets, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

d. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records, and other documents, indicating money which may have been generated from the sale of narcotics;

e. Telephone paging devices, beepers, mobile phones, car phones, and other communication devices which evidence participation in a conspiracy to distribute controlled substances;

f. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items, reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking;

g. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks, and certificates of deposit; money counting machines; money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items, obtained with the proceeds of the sales of controlled substances;

i. Records, items, and documents reflecting travel for the

purpose of participating in narcotics trafficking, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

    j.    Indicia of occupancy, residency or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, canceled envelopes and keys and bank account records   a. Narcotic drugs and controlled substances, or any residue thereof, drug paraphernalia, scales, measuring devices and weighing devices, narcotics diluting or cutting agents, narcotics packaging materials, plastic wrap, foil, cellophane, jars, plastic bags, containers, or any other items used in the processing of narcotics; and

    k.    Any firearms, ammunition, or firearms related paraphernalia.