UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 04-10196-GAO

UNITED STATES OF AMERICA

v.

JOHN FORTES

MEMORANDUM AND ORDER
February 14, 2006

O'TOOLE, D.J.

The defendant, John Fortes, has moved to suppress all evidence derived from a search of his residence by agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives pursuant to a warrant. Fortes argues that the warrant was defective because the application affidavit was insufficient to support the magistrate judge's probable cause determination that there was a nexus between the unlawful activity described in the affidavit – the sale of controlled substances and ammunition – and the location searched, an apartment that Fortes allegedly shared with his girlfriend. For the reasons set forth below, Fortes' motion to suppress is denied.

A search warrant application must demonstrate probable cause both that (1) a crime has been committed (the so-called "commission" element) and (2) that the evidence of the offense sought by the warrant will be found at the place to be searched (the so-called "nexus" element). See United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005). Fortes expressly concedes that the affidavit in support of the search warrant application demonstrated probable cause as to the "commission" element by detailing his sales of controlled substances and ammunition to a confidential witness ("CW"), but he argues that it fails to satisfy the "nexus" element because it did not connect the

apartment searched with the unlawful activities. In reviewing an affidavit to determine whether it establishes probable cause to search a particular place, a magistrate must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 48-49 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Once a magistrate has reviewed an affidavit and found probable cause, a reviewing court must give significant deference to the magistrate's initial evaluation, reversing the decision – and suppressing the evidence – only if there is no "substantial basis" for concluding that probable cause existed. See id. at 48. Upon review of the affidavit at issue here, I conclude there was "substantial basis" for the magistrate to have concluded there was probable cause to believe that the items to be seized by the warrant would be found at the apartment searched.

First, the affidavit provided facts from which the magistrate judge could reasonably infer that Fortes resided at the apartment that was searched. The CW had told the authorities that Fortes resided at his girlfriend's apartment at 68 South Street in New Bedford for several months. Authorities also interviewed the property manager who told them that Fortes' girlfriend was the tenant at the apartment to be searched – 68 South Street, Apartment 10 – and that Fortes lived there with his girlfriend and an infant. Additionally, Fortes had been observed driving a silver Lexus registered to his girlfriend at that address. Law enforcement surveillance also observed that silver Lexus parked at 68 South Street on numerous occasions over the month preceding the warrant application.

The affidavit also disclosed that Fortes' mother lived in Apartment 11 at 68 South Street, next door to Apartment 10, and that Registry of Motor Vehicles records indicated that Fortes used that

address, Apartment 11, on his driver's license.  These facts made it somewhat more ambiguous whether Fortes lived in Apartment 10 or Apartment 11, but the magistrate was entitled to conclude that the more current information, based on the recent observations of the property manager, was the more reliable and that Fortes was residing in Apartment 10 with his girlfriend and baby, rather than next door to them in his mother's apartment.

Next, the affidavit provided sufficient facts from which a magistrate could make a reasonable inference that the apartment searched was tied to Fortes' narcotics distribution activities.  Although all three controlled purchases by the CW took place on street corners and not at the subject apartment, on the occasion of the last purchase law enforcement officers made the following observations: (1) Fortes returned to the apartment moments after receiving a call from the CW setting up the purchase; (2) shortly thereafter, Fortes left the apartment and sold the CW a substance later tested and shown to be cocaine; and (3) Fortes then returned to the apartment with the cash given him by the CW.

In making his common sense determination, the magistrate need not have speculated, as Fortes urges in his motion, that because law enforcement officers did not see Fortes carrying anything in or out of the apartment with him that "he could have simply stopped to use the bathroom, to retrieve the car keys, or to say goodbye to his wife and child."  Def.'s Mem. in Supp. at 9.  First, there is little significance to the fact that officers did not actually see him carrying anything that could be thought to be contraband from the apartment.  The sale involved about an ounce of cocaine.  It would be unreasonable to think that cocaine in that amount would be carried in such a way that it would be seen by surveilling officers.  Moreover, the magistrate need not have been deterred from the common sense conclusion that Fortes had returned to the apartment to get the drugs he was

selling to the CW simply because some other possibilities – none actually supported themselves by any evidence or inferences – could be imagined.

On the information presented in the affidavit, the magistrate could reasonably infer that evidence relative to the sale of drugs could be found at the subject apartment. As a matter of common sense, the residence of a suspected drug dealer would be a "likely place to seek to find incriminating items." See United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999) ("In the case of drug dealers, evidence is likely to be found where the dealers live." (quoting United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986))). It was also reasonable to infer that Fortes had a substantial amount of cash, that he would store it in a "safe yet accessible place," and that the apartment he was residing at with his girlfriend was such a place. See Ribeiro, 397 F.3d at 50. It would also be reasonable to infer that a drug dealer such as Fortes might maintain some documents showing customer and supplier information as well as related accounting information. See Feliz, 182 F.3d at 87.

Finally, the magistrate was presented in the affidavit with the agent's opinion, based on his training and experience in conducting narcotics investigations, that drug traffickers (1) maintain large amounts of currency and negotiable instruments on hand to conduct ongoing narcotics business, (2) maintain for periods of time, sometimes exceeding several years, books, records, receipts, notes, ledgers, airline tickets and other documents facilitating the sale of narcotics in a place where they would have ready access to them, (3) commonly hide contraband, proceeds, and records of drug transactions in secure locations in their residences to provide for ready access and the ability to conceal from law enforcement, (4) commonly maintain evidence related to their hiding, transfer, concealment, or expenditure of narcotics proceeds within their residences or other locations over

which they maintain dominion and control, (5) commonly maintain records showing contact information for associates in their narcotics distribution organization, and (6) keep paraphernalia for packaging, cutting, weighing and distributing narcotics. Furthermore, the affiant stated, based upon his training and experience in conducting firearms investigations, that those who possess firearms and ammunition typically retain them for long periods of time and keep them in their dwelling. Although a law enforcement officer's generalized observations about criminal habits alone will not suffice to establish the nexus element, here those general matters are combined with specific observations about Fortes' conduct in relation to his residence. Evaluating the affidavit as a whole, the magistrate properly concluded that there was probable cause to believe that the evidence sought in the search warrant would be found in the apartment Fortes resided at with his girlfriend. See Ribeiro, 397 F.3d at 50-51.

For the foregoing reasons, Fortes' motion to suppress (Dk. # 37) is DENIED.

It is SO ORDERED.


February 14, 2006                          \s\ George A. O'Toole, Jr.
DATE                                        DISTRICT JUDGE