AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

DISTRICT OF MASSACHUSETTS

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

Apartment No. 10 at 68 South Street, New Bedford, MA,
a basement level apartment with the number "10"
on it in a multi-story brick building.

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 04-1795 CBS

I, Brendan Hickey, being duly sworn depose and say:

I am a(n) ATF Special Agent (Official Title) and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

Apartment No. 10 at 68 South Street, New Bedford, MA, a basement level unit with the number "10" on the door, in a three and a half story brick building, with a sign in the front reading "Verdean Gardens."

in the _____ District of Massachusetts

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Schedule A attached.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
property that constitutes evidence of a criminal offense; or contraband, the fruits of crime, or things otherwise criminally possessed; or property which is, has been or could be used as the means of committing a criminal offense
concerning a violation of Title  21  United States code, Section(s)  841(a)(1), and 18 U.S.C. s. 922(g).
The facts to support a finding of Probable Cause are as follows:

See attached affidavit of ATF Special Agent Brendan Hickey

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

Signature of Affiant

Sworn to before me, and subscribed in my presence

6-22-04                             at    Boston, Massachusetts
Date                                       City and State

CHARLES B. SWARTWOOD III, U. S. Magistrate Judge
Name and Title of Judicial Officer         Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.



Case 1:04-cr-10196-GAO   Document 48-2   Filed 04/13/2007   Page 2 of 18
Case 1:04-cr-10196-GAO   Document 35-2   Filed 10/24/2005   Page 3 of 14

04-1795-CBS

## AFFIDAVIT

I, Brendan Hickey, having been duly sworn, hereby depose and state:

1. I am a Special Agent ("SA") of the Bureau of Alcohol, Tobacco and Firearms & Explosives ("ATF"), assigned to the Boston, Massachusetts Field Division, and have been so employed for approximately four years. As an ATF Special Agent, I am responsible for conducting investigations of federal firearms, arson and explosive laws. Prior to joining ATF, I worked as a Special Agent with the United States Immigration & Naturalization Service ("INS") for a period of approximately five years, as a United States Border Patrol Agent for a period of two years, and in local law enforcement, for approximately one and a half years. As a result of my experience, I have been involved in numerous investigations relating to narcotics and firearms.

2. The statements contained in this affidavit are based on my own investigation and on information provided to me by other ATF agents and local law enforcement authorities.

3. This Affidavit is submitted in support of an application for a warrant to search the residence of Emanuela Degraca, a/k/a, Emanuela Alves at 68 South Street, Apartment 10 in the Verdean Gardens apartment complex, New Bedford, Massachusetts.

4. Over the past several months, I have had a series of conversations with a cooperating witness ("CW") who informed me

that FORTES routinely sells cocaine in the City of New Bedford. The CW has past convictions for larceny, armed robbery, drug distribution and intimidation of a witness. He/she has a history of use of narcotics, and he/she receives compensation and potential consideration on open cases for the information that he/she provides to law enforcement.

5. The CW has made three controlled purchases of cocaine from FORTES. On May 27, 2004, the CW contacted FORTES using the telephone number he has used in the past to contact FORTES in order to purchase narcotics, 508-294-4048. FORTES agreed to meet the CW at the intersection of Purchase Street and Campbell Street in New Bedford. FORTES drove a silver Lexus, bearing MA registration 65ML05, to the area near the corner of Purchase Street and Campbell Street in New Bedford. The CW met FORTES at that location and purchased approximately 29 grams of a substance that tested positive in a field test for the presence of cocaine from FORTES for $1400. The CW asked FORTES if he could obtain ammunition for the CW. FORTES said he might be able to obtain some ammunition at a later date. The Massachusetts Executive Office of Health and Human Services Dept. of Public health State Laboratory Institute (state laboratory) in Boston has examined the substance and confirmed that it is in fact 28.12 grams of cocaine.

6. On June 2, 2004, the CW contacted FORTES again using that same telephone number and arranged to purchase narcotics from FORTES. FORTES agreed to meet the CW on Campbell Street in New Bedford. The CW met FORTES and purchased approximately 26 grams of a substance that was field tested and tested positive for the presence of cocaine. FORTES drove a white van, bearing MA registration 50BY17, to the area of Campbell Street. The CW asked FORTES again if he could obtain ammunition. FORTES told him/her that he could but that he would have to travel to another location to pick it up. FORTES left and returned a short time later and sold six rounds of 9mm ammunition to the CW in return for $60.

7. On June 22, 2004, the CW contacted FORTES again using that same telephone number and arranged to purchase an ounce of cocaine from FORTES for $1400.00. Moments after the call, I observed FORTES enter 68 South Street and enter Apartment No. 10. He left shortly thereafter and met with the CW, where other officers observed FORTES sell the CW an ounce of a substance which field testing subsequently showed to be cocaine. FORTES then returned to 68 South Street and reentered Apartment No. 10.

9. The CW told me that FORTES has resided at the home of his girlfriend, Emanuela Degraca, a/k/a Emanuela Alves at 68 South Street, New Bedford, for several months. I contacted Sheila Vassal, the property manager of the Verdean Gardens

3

Apartments. Ms. Vassal told me that Emanuela Degraca is listed as the tenant in Apartment 10 at 68 South Street. Ms. Vassal also told me that she knows John FORTES and she knows that he lives at that apartment with Ms. Degraca and an infant. Ms. Vassal told me that FORTES' mother lives in Apartment 11, which is next door to the apartment FORTES and Ms. Degraca share.

9. Sgt. Paul Oliveira of the New Bedford Police Department checked the records of the Massachusetts Registry of Motor Vehicles ("RMV") and learned that the address FORTES listed most recently for his license is 68 South Street, Apartment 11, New Bedford.

10. During the May 27, 2004 drug transaction referred to in paragraph #4, FORTES was driving a silver Lexus bearing MA registration 65ML05. Sgt. Oliveira checked the RMV records and learned that the Lexus is registered to Emanuela Alves Degraca of 68 South Street, Apartment 10, New Bedford. Sgt. Oliveira told me that he has observed that silver Lexus parked near 68 South Street on several occasions within the last 10 days. The CW has also informed me that he/she has witnessed FORTES sell narcotics from the Lexus, or has bought narcotics himself/herself from FORTES, while FORTES drove the Lexus.

11. Both New Bedford Police and ATF surveillance units have seen the aforementioned Lexus and minivan parked at 68 South Street on numerous occasions over the past month.

4

12. Based on my training and experience in connection with firearms investigations, I know that firearms and ammunition are not easily disposed of and that individuals who possess them typically retain them for long periods of time and keep them in their place of dwelling. Based on my training and experience in connection with narcotics investigations, I also know the following to be true:

   a. That drug traffickers often maintain on hand large amounts of United States currency or other negotiable items in order to maintain their ongoing narcotics business and transact the sales of narcotics;

   b. That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, gasoline receipts, money orders, while facilitating the sale of narcotics, and these documents are maintained where the drug trafficker has ready access to them. It is not uncommon that these records are kept and maintained for periods of time, which can exceed several years;

   c. That it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, which gives them ready access to such items and the ability to conceal them from law enforcement authorities;

5

d. That it is common for persons involved in drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the drug traffickers within their residences, businesses or other locations which they maintain dominion and control over, including safety deposit boxes;

e. That drug traffickers commonly maintain addresses and telephone numbers in books and/or papers which reflect names, addresses, and telephone numbers for their associates in the narcotics organization; and

f. That drug traffickers usually keep paraphernalia for packaging, cutting, weighing and distributing the controlled substances; that these items include, but are not limited to, scales, plastic bags, and cutting agents.

13. Based on the foregoing, I have probable cause to believe that evidence of the commission of criminal offenses and contraband, the fruits of crime, and things otherwise criminally possessed, and property designed and intended for use and which

is and has been used as the means of committing a criminal offenses, in violation of Title 18, United States Code, Section 922(g)(1), and Title 21, United States Code, Section 841(a)(1) may be found inside Apartment 10 at 68 South Street, New Bedford, Massachusetts, and accordingly seek permission to seize the items listed below and attached hereto as Schedule A.

### Description of Premises

14. The property at 68 South Street, New Bedford, Massachusetts, is a three and one half story brick apartment building. A sign in front of the building reads "Verdean Gardens." Apartment number 10 is located on the basement level. There are six units on that level and each bears the number of the unit on its door. Thus, the number "10" appears on the door of Apartment number 10.

### Items to be Seized

17. The items to be seized include the following:

  a. Narcotic drugs and controlled substances, or any residue thereof, drug paraphernalia, scales, measuring devices and weighing devices, narcotics diluting or cutting agents, narcotics packaging materials, plastic wrap, foil, cellophane, jars, plastic bags, containers, or any other items used in the processing of narcotics;

  b. Cash;

  c. Narcotics or money ledgers, narcotics distribution or customer lists, including but not limited to, pay/owe sheets,

7

narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

   d.  Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records, and other documents, indicating money which may have been generated from the sale of narcotics.

   e.  Telephone paging devices, beepers, mobile phones, car phones, and other communication devices which evidence participation in a conspiracy to distribute controlled substances.

   f.  Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items, reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking;

   g.  Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks, and certificates of deposit; money counting machines; money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

8

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items, obtained with the proceeds of the sales of controlled substances;

i. Records, items, and documents reflecting travel for the purpose of participating in narcotics trafficking, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

j. Indicia of occupancy, residency or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, canceled envelopes and keys and bank account records; and

k. Any firearms, ammunition, or firearms related paraphernalia.

I certify that the foregoing is true and correct. Executed at Boston, Massachusetts, this 22 day of June, 2004.

BRENDAN HICKEY
Special Agent, ATF

Subscribed and sworn before me this 22nd day of June, 2004, in Boston, Massachusetts.

CHARLES B. SWARTWOOD, III
United States Magistrate Judge

10

## SCHEDULE "A"

a. Narcotic drugs and controlled substances, or any residue thereof, drug paraphernalia, scales, measuring devices and weighing devices, narcotics diluting or cutting agents, narcotics packaging materials, plastic wrap, foil, cellophane, jars, plastic bags, containers, or any other items used in the processing of narcotics;

b. Cash;

c. Narcotics or money ledgers, narcotics distribution or customer lists, including but not limited to, pay/owe sheets, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when narcotics were obtained, transferred, sold, distributed, and/or concealed;

d. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records, and other documents, indicating money which may have been generated from the sale of narcotics;

e. Telephone paging devices, beepers, mobile phones, car phones, and other communication devices which evidence participation in a conspiracy to distribute controlled substances;

f. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items, reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking;

g. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including traveler's checks, bonds, stock certificates, cashier's checks, and certificates of deposit; money counting machines; money wrappers and rubber bands, boxes, bags, briefcases, suitcases, or containers used to carry controlled substances;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items, obtained with the proceeds of the sales of controlled substances;

i. Records, items, and documents reflecting travel for the

purpose of participating in narcotics trafficking, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to locations;

    j.    Indicia of occupancy, residency or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, canceled envelopes and keys and bank account records  a. Narcotic drugs and controlled substances, or any residue thereof, drug paraphernalia, scales, measuring devices and weighing devices, narcotics diluting or cutting agents, narcotics packaging materials, plastic wrap, foil, cellophane, jars, plastic bags, containers, or any other items used in the processing of narcotics; and

    k.    Any firearms, ammunition, or firearms related paraphernalia.

## AFFIDAVIT OF JOHN FORTES

I, John Fortes, state that the following is true and accurate to the best of my memory and knowledge:

1. My true name is John Fortes and I the defendant in the instant matter.

2. On or about June 23, 2004, I stayed overnight at Emanuela Alves' apartment located at 68 South Street, Apartment #10 in New Bedford to look after our child the next day. I occasionally stayed over that apartment for that purpose. When I watched our son, Emanuela left me a key to the apartment and I had access to the entire apartment. I was arrested in the apartment the next morning as I had slept over.

3. I had a reasonable expectation of privacy in that apartment and its contents at the time of the search, given that I was staying overnight and taking care of our child.

4. My mother, Elizabeth Fortes, lived (and still does) in apartment #11 of the same complex. My mother had given me a key to her apartment years before this search occurred because I visited her often. I was also able to open the front door to the complex.

5. When you are standing at the front door of the apartment complex, you cannot see Emanuela's or my mother's apartment. If someone was watching me enter the complex, they could not tell which apartment I was visiting because the walls would block their view.

Signed under pains and penalties of perjury,

*/s/ John Fortes*
JOHN FORTES

B

## AFFIDAVIT OF ELIZABETH FORTES

I, Elizabeth Fortes, state that the following is true and accurate to the best of my memory and knowledge:

1. My true name is Elizabeth Fortes and I am the mother of John Fortes. I live at 68 South Street, Apartment #11 in New Bedford.

2. My son John has a child with Emanuela Alves, who lives at 68 South Street, Apartment #10 in New Bedford.

3. John has never lived with Emanuela at that apartment. He may have stayed there on occasion to look after his son, but he did not reside there. I know because I live on the same floor as Emanuela and saw her and my grandson often. John had an apartment in Tiverton.

4. I also know a woman named Sheila Vassel who at one time also lived at 68 South Street and was the caretaker of that apartment complex where Emanuela and I lived. Long before Emanuela's apartment was searched back in June 2004, Ms. Vassal had moved out to another location. Her son had taken over her apartment and was living there at the time of the search. After she moved out, I do not remember seeing Sheila too often.

5. I spoke to Sheila after the search and she told me that she never told the New Bedford police that John lived in Emanuela's apartment.

6. I have been told that a federal agent stated that he saw my son John enter apartment #10 a few days before Emanuela's apartment was searched. Assuming that the agent was outside the complex (given that the front door is always locked) when he supposedly made this observation, it would be impossible for him to see which apartment my son entered. Given the configuration of the apartments, a person standing outside could not have seen whether John entered my apartment, Emanuela's apartment or someone else's for that matter.

Signed under pains and penalties of perjury,

*Elizabeth Fortes*
ELIZABETH FORTES

C

NEW BEDFORD POLICE DEPARTMENT

2002-04334

PAGE 3

**Prisoner's Property:**

$3.06 in change
$204.00 in cash
2 cassette tape
1 pencil

NO CITATIONS ASSOCIATED TO THIS REPORT

NO TOWS ASSOCIATED WITH THIS REPORT.

## PROPERTY

Type: HEROIN          Qnty: 000000003.     GLASSINE BAG(S)
Status: SEIZED        Descr: STAMPED THE SCORE
OCIB Case#: 02-OC-59  Prop.Tag#: 00077079 Recov.OFC: 3788

Total Property Value Stolen: $      0   Recovered: $      0

## PHOTOS AND FINGERPRINTS

Processed:    By:                           Photos: NO    Prints: NO

---NARRATIVE---

Sir,
 On March 16, 2002 at approximately 1235 hours, Det. John PEREIRA and I were informed by Sgt. Mark STONE that he and other members of the Organized Crime Intelligence Bureau were conducting under-cover surveillance of a particular vehicle that he might want stopped. The surveillance of this vehicle continued into Fairhaven.

 Sgt. STONE instructed Det. PEREIRA to contact Fairhaven Police to assist us with the stop of the vehicle. At this time, Det. PEREIRA contacted Fairhaven Police and arranged for us to meet with a cruiser at Stop & Shop on route #6. A short time later we met with Ofc. MELLO of the Fairhaven Police Dept.

 During this time Sgt. STONE informed us that a second vehicle met with the target vehicle and he observed what he believes to be a transaction between occupants of both vehicles (refer to Sgt. STONE's surveillance report for

================================================================================

further details). Sgt. STONE further related that the second vehicle is departing and that he was going to keep constant surveillance of the vehicle until it can be stopped.

At this time, I rode with the Ofc. MELLO, so he could stay in communications with the moving surveillance. Sgt. STONE followed the vehicle (black pick-up w/ R.I. registration) north on route #240, then west on Route #195. Ofc. MELLO and I, followed by Det. PEREIRA were able to stop the vehicle on the exit ramp onto Coggeshall Street, from route #195.

I approached the passenger side of the vehicle and asked the passenger, identified as Dino DACOSTA (09/23/76) to exit the vehicle. Det. PEREIRA made contact with the operator, identified as Michael DESOUSA (06/01/76) and subsequently found three (2) bags of heroin in DESOUSA's pants pocket. Both parties were then placed under arrest and secured in our vehicle.

We then transported both parties into Police Headquarters for booking. During the booking process, both parties were allowed to use the phone and subsequently transported to the House of Correction.

The three (3) bags of heroin were placed in an evidence sleeve, then into a drug envelope. The envelope was then secured in the drug evidence locker.

Respectfully Submitted,
Det. Shain Ramos #3757

## ADMINISTRATION

Reporting Officer: RAMOS, SHAIN E
Officer1: RAMOS, SHAIN E         #: 3757  Unit: DX16  Date: 03/17/02
Officer2: PEREIRA, JOHN P        #: 3788  Unit: DX16
Routing:              Att:         Date:                    Div:
Clearance :                       Clearance Date:
Supervisor : STONE, MARK H        #: 3045
Approved By:                      #:
Attachments: NONE

## AFFIDAVIT OF JAMES BUDREAU

I, James Budreau, state that the following is true and accurate to the best of my memory and knowledge:

1. I represent John Fortes in the instant matter.

2. Based upon my investigation, we have uncovered the Cooperating Informant's criminal history which is lengthy. He has entries for convictions and arrests both before and after the search in June 2004. He has been arraigned 25 separate times for crimes prior to the June 24, 2004 search in this case.

3. These arraignments range include: malicious destruction of property on multiple occasions, unarmed robbery, two for assault and battery, intent to steal from a depository, intimidation of a witness, armed robbery, various distribution convictions including counterfeit drugs, possession of heroin, escape, larceny more than $250 on multiple occasions, etc. Many of these crimes are crimes of dishonesty such as stealing and cashing checks, receiving stolen goods, etc. Others strongly suggest that Mr. DeCosta had a serious drug abuse problem.

4. I have learned through my investigation that Mr. DeCosta apparently had a drug abuse problem, before, during and after the search in this case.

5. I have been told that you cannot see Mrs. Fortes' apartment or Ms. Alves' apartment from the lobby or exterior of the apartment complex. Both apartments are located in the basement of the same apartment complex located at 68 South Street in New Bedford.

Signed under pains and penalties of perjury,

_____
JAMES BUDREAU

E