**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA  )
                          )
     v.                   )
                          )    CR. NO. 04-10196-GAO
JOHN FORTES               )
                          )

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR A *FRANKS* HEARING**

**Introduction**

The United States opposes the defendant's motion for a Franks hearing and to suppress evidence found during a search of an apartment at apartment number 10 at 68 South Street following his arrest.[1]  As discussed below, the defendant has failed to make a substantial preliminary showing that the affiant, ATF Special Agent Brendan Hickey, made materially false statements which were deliberate or done with a reckless disregard for the truth.  See Franks v. Delaware, 438 U.S. 154 (1978).  Even if the assertions at issue were excised, the affidavit still supported a finding of probable cause for the search warrant to issue.  As such, the motion is without merit and should be denied.

**Relevant Background**

    1.   The Search Warrant Affidavit

On June 24, 2004, SA Hickey submitted an affidavit in

---

[1] The defendant previously moved to suppress evidence seized during the search of the apartment. [D.37].  The defendant conceded that there was probable cause to believe he had committed the crimes charged but argued that there was insufficient evidence to show a nexus between his drug dealing and the apartment.  On February 14, 2006, the Court denied the moton. [D.40].

support of a warrant to search apartment number 10 at 68 South Street in New Bedford.  In the affidavit, SA Hickey averred the following facts, set forth here in summary form.

Special Agent Hickey had over twelve years of experience working for the Bureau of Alcohol, Tobacco and Firearms & Explosives (ATF), the United States Immigration & Naturalization Service, the United States Border Patrol, and in local law enforcement. [Aff., ¶1].  As a result of these experiences, SA Hickey had been involved in numerous investigations relating to narcotics and firearms. [Id.].

SA Hickey received information from a cooperating witness (CW) that the defendant was selling cocaine in New Bedford. [Aff., ¶4].  SA Hickey acknowledged that the CW had previously used narcotics, had past convictions for larceny, armed robbery, drug distribution and intimidation of a witness, and had received compensation and potential consideration on open cases for the information that he/she provided to law enforcement. [Aff., ¶4].

The CW subsequently made three controlled purchases of cocaine from the defendant on May 27, 2004, June 2, 2004, and June 22, 2004. [Aff., ¶8].  On June 22nd in particular, the CW called the defendant and arranged to purchase an ounce of cocaine for $1400.00. [Id.].  Moments after the call, SA Hickey observed the defendant enter 68 South Street and go into unit number 10. [Id.].  He emerged from the apartment minutes later and met with

the CW, where other officers observed the defendant sell the CW an ounce of a substance which field testing subsequently showed to be cocaine. The defendant then returned to 68 South Street and reentered apartment number 10. [Id.].

The CW told SA Hickey that the defendant had resided for several months been residing at the home of his girlfriend, Emanuela Degraca, a/k/a Emanuela Alves at 68 South Street, New Bedford. [Aff., ¶9]. SA Hickey subsequently contacted Sheila Vassal, the property manager of the Verdean Gardens Apartments. She told him that Emanuela Degraca was listed as the tenant in Apartment 10 at 68 South Street. [Aff., ¶9]. She also told him that she was aware that the defendant lived in that apartment with Ms. Degraca and an infant. [Id.]. Ms. Vassal told SA Hickey that the defendant's mother lived in Apartment 11, which is next door to the apartment in which the defendant and Ms. Degraca lived. [Id.].

Sgt. Oliveira checked the records of the Massachusetts Registry of Motor Vehicles ("RMV") and learned that the address the defendant listed most recently for his license was 68 South Street, Apartment 11, New Bedford. [Id.]. However, the defendant had driven a silver Lexus bearing MA registration 65ML05 during the May 27, 2004, transaction and Sgt. Oliveira determined from RMV records that the vehicle was registered to Emanuela Alves Degraca of 68 South Street, Apartment 10, New Bedford, MA. [Id.].

Sgt. Oliveira told SA Hickey that he had observed the Lexus parked near 68 South Street on several occasions within the last 10 days, and the CW stated that it had previously seen the defendant sell narcotics from the Lexus. [Aff., ¶10]. In addition, officers had seen the Lexus, as well as a van the defendant was seen driving during the June 2, 2004, transaction, parked at 68 South Street on numerous occasions over the past month. [Aff., ¶11].

2. <u>SA Hickey's Alleged Mistatements</u>

Fortes argues that SA Hickey's affidavit contained three materially factual allegations that "were made with reckless disregard of the truth or are plainly false." [Def.'s Mem. 2].

First, SA Hickey averred that he observed the defendant enter apartment number 10 at 68 South Street on June 22, 2004. [Aff., ¶7]. The defendant contends this assertion is false, however, because "the door to that apartment is not visible from the outside." [Def.'s Mem. 2-3]. The defendant necessarily assumes that "Agent Hickey was standing outside" the apartment building when he observed the defendant and, therefore, would have lost sight of the defendant when the defendant entered the building. [Id. at 3].

Second, the defendant contends that SA Hickey falsely averred in his affidavit that New Bedford Police Detective Paul Oliveira spoke with the building manager for the apartment

4

building at 68 South Street, Sheila Vassell, and was told by her that the defendant resided in unit number 10 with Emanuela Alves.[2] [Def.'s Mem. 3].  Fortes contends that this statement was false because the building manager did not reside in the building at the time and therefore could not have made such an observation. [Id.].

Finally, Fortes contends that SA Hickey "encouraged or intentionally embraced" a "lie" when he averred that the CW had also corroborated that the defendant resided at 68 South Street. [Def.'s Mem. 3].  The defendant appears to argue that it was improper to rely on the CW because the CW's "extensive criminal record and concerns about his reliability (or lack thereof) was clearly known" to SA Hickey and Detective Oliveira. [Id.].

Fortes contends that "these false statements were submitted for one purpose only; to cause the Magistrate to find a nexus between Mr. Fortes [sic] alleged drug activity and that apartment." [Def.'s Mem. 4].  The defendant argues that probable cause to issue the search warrant would have been lacking had these assertions been excised from the affidavit. [Id.].

---

[2] SA Hickey referred to the building manager as Sheila Vassal but Fortes refers to her as Sheila Vassell.

5

**Argument**

**The Defendant Is Not Entitled To A *Franks* Hearing Because There Are No Material Misstatements In The Search Warrant Affidavit, And Because Probable Cause Would Still Exist Even If The Statements At Issue Were Excised.**

The Supreme Court has recognized that there is a presumption of validity with respect to an affidavit supporting a search warrant.  Franks v. Delaware, 438 U.S. 154, 171 (1978).  In order to obtain a hearing on whether a search warrant affidavit contains false information, a defendant must make a substantial preliminary showing that the affiant knowingly or recklessly included false information material to the finding of probable cause.  See id. at 155-56.  More specifically, the Court stated that, in order to show entitlement to an evidentiary hearing as to whether a warrant affidavit contains deliberately or recklessly false statements,

> the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set

> to one side, there remains sufficient content
> in the warrant affidavit to support a finding
> of probable cause, no hearing is required.

438 U.S. at 171-72.  Applied here, no hearing is required because there are no material misstatements and because the affidavit supported a finding of probable cause even if the assertions at issue were excised.

**1.  <u>There were no material misstatements in the affidavit</u>.**

Fortes alleges first that SA Hickey could not have seen the defendant enter apartment 10 at 68 South Street on June 22, 2004 because SA Hickey would not have been able to observe the particular unit Fortes entered *assuming SA Hickey was standing outside*. [Def.'s Mem. 2-3](emphasis added).  In fact, though, SA Hickey was standing inside the building at the time, positioned between units 10 and 11, posing as a handyman, painting and caulking.  While it is true that SA Hickey did not reveal his location in the search warrant affidavit, he was, of course, not obligated to reveal every investigative or surveillance tactic underlying his observations.  More importantly, Fortes does not contend that he (Fortes) did not enter and exit apartment number 10 on June 22, 2004, and he does not dispute that SA Hickey would have been able to observe Fortes entering and exiting the apartment from this vantage point.  Accordingly, this claim has

7

no force.[3]

    Next, Fortes argues that SA Hickey falsely stated that Detective Oliveira told him that Sheila Vassal corroborated that the defendant resided in apartment 10 with Emanuela Alves. [Def.'s Mem. 3].  This claim fails easily.  As an initial matter, the claim is fatally flawed *a priori* because SA Hickey never averred that Sgt. Oliveira spoke to Sheila Vassal.  Rather, SA Hickey stated that he, not Sgt. Oliveira, spoke with Ms. Vassal and was told that Emanuela Degraca was the official tenant in unit 10, but that Ms. Vassal knew Fortes and was aware that he also resided there with Ms. Degraca and an infant. [Aff., ¶ 9]. Because Fortes does not contend that SA Hickey never spoke to Sheila Vassal, this claim has no force regardless of whether it is true.

    Even assuming Fortes were to respond that he meant to contend more generally that no one in law enforcement spoke to Sheila Vassal, the claim would still be bootless because Fortes does not support the claim by way of an affidavit from Ms. Vassal.  On the contrary, Fortes merely avers in an affidavit

---

[3]The government was prepared to have SA Hickey execute an affidavit attesting to his being inside rather than outside the building at 68 South Street on June 22, 2004, but contends, respectfully, that it is not necessary to do so here.  Any such affidavit would serve merely to explain how SA Hickey was in a position to make specific observations –observations which Fortes does not ever contend are incorrect or false.  While the information, in hindsight, might have helped Fortes to appreciate the high level of surveillance he was under, the search warrant affidavit correctly reflects SA Hickey's observations and there is, ultimately, no factual dispute to resolve.

from his mother that she spoke to Ms. Vassal at some point after the search and was told by Ms. Vassal that she had never told anyone that Fortes resided in Emanuela's apartment. [See Elizabeth Fortes Aff., ¶5].  The Court should summarily decline to consider this contention.  Beyond being excessively vague in terms of time and detail to the point of being utterly unhelpful, there simply is no basis to assess the assertion in the absence of a sworn, detailed statement from Ms. Vassal herself.  Franks, 438 U.S. at 171-172 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished...").  Even assuming Ms. Vassal did make such a statement to Fortes's mother, it is wholly reasonable to presume that Ms. Vassal was confronted or contacted by Fortes's mother, or someone in Fortes's camp, and understandably chose to simply deny having provided information to law enforcement.[4]

Finally, Fortes contends that SA Hickey knowingly made false statements in the affidavit to the extent he relied on information from the CW as to where Fortes resided.[5]  This claim fails on its face because it is nothing more than a general

---

[4] Given the amount of time –almost three years, that has passed since the search, it is also reasonable to believe that Fortes would have raised this issue earlier through some other pleading if it were true.

[5] While the government certainly understands the strategic reasons for highlighting the CW's criminal history and interactions with law enforcement, Fortes's decision to prominently identify the CW in the course of a portion of an argument which arguably has less than great merit was, in the government's view, regrettable and not necessary.

attack on the CW's credibility.  It is well established that the relevant inquiry in the <u>Franks</u> context is on the affiant's truth rather than the correctness of any information the affiant may have received from an informant.  <u>Franks</u>, 438 U.S. at 171-72 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."); <u>see</u> <u>also</u> <u>United States v. Brown</u> ,2006 WL 3087695, *10 (M.D.Pa.)("the relevant inquiry is the veracity of the affiant, not the veracity of the confidential informant whose information was included in the application in support of the search warrant."); <u>Krauser v. Scalise</u>, 1989 WL 158006, *3 (N.D.Ill.)(same).  Further, while Fortes does contend that SA Hickey knew the CW's information was not reliable, this self-serving, conclusory statement is belied by the fact that the information the CW provided, e.g., the defendant's drug dealing, his use of the Lexus, his residence at 68 South Street, was corroborated by law enforcement officers.  In short, this claim must be rejected.

    2.   **<u>Probable cause would exist even if the statements at issue were excised</u>.**

Finally, even assuming the three statements at issue were excised, probable cause still would have existed for the warrant to issue because there still would have been a nexus between Fortes's drug dealing and apartment number 10 at 68 South Street, in particular because Fortes was seen using a Lexus registered to

that unit.  More specifically, the magistrate still would have been presented with facts showing that the CW made three controlled purchases of cocaine from the defendant on May 27, 2004, June 2, 2004, and June 22, 2004. [Aff., ¶8].  On June 22nd in particular, the CW called the defendant and arranged to purchase an ounce of cocaine for $1400.00. [Id.].  Moments after the call, SA Hickey observed the defendant enter 68 South Street. [Id.].  He emerged from the building minutes later and met with the CW, where other officers observed the defendant sell the CW an ounce of a substance which field testing subsequently showed to be cocaine.  The defendant then returned to 68 South Street and reentered the building. [Id.].

   SA Hickey contacted Sheila Vassal, the property manager of the Verdean Gardens Apartments.[6]  She told him that Emanuela Degraca was listed as the tenant in Apartment 10 at 68 South Street. [Aff., ¶9].  She also told him that she was aware that the defendant lived in that apartment with Ms. Degraca and an infant. [Id.].  Ms. Vassal told SA Hickey that the defendant's mother lived in Apartment 11, which is next door to the apartment in which the defendant and Ms. Degraca lived. [Id.].

   Sgt. Oliveira checked the records of the Massachusetts Registry of Motor Vehicles ("RMV") and learned that the address

---

[6]As noted above, the defendant does not dispute SA Hickey's assertion that he spoke to Ms. Vassal.  Rather, he contends only that Ms. Vassal did not speak to New Bedford Police Sgt. Paul Oliveira.

the defendant listed most recently for his license was 68 South Street, Apartment 11, New Bedford. [Id.]. However, the defendant had driven a silver Lexus bearing MA registration 65ML05 during the May 27, 2004, transaction and Sgt. Oliveira determined from RMV records that the vehicle was registered to Emanuela Alves Degraca of 68 South Street, Apartment 10, New Bedford, MA. [Id.]. Both New Bedford Police and ATF surveillance units had seen the Lexus, as well as a van the defendant was seen driving during the June 2, 2004, transaction, parked at 68 South Street on numerous occasions over the past month. [Aff., ¶11].

Based on these facts, the magistrate judge easily could have concluded that Fortes, who concedes the evidence showed he was selling drugs, was making some use of his girlfriend's car and her apartment to facilitate the drug dealing.

### Conclusion

For the foregoing reasons, the Court should find that the defendant has failed to make a substantial preliminary showing that the affiant knowingly or recklessly included false information material to the finding of probable cause, and that the affidavit would, in any event, have supported a finding of probable cause even had the alleged misstatements been excised. The Court should accordingly deny the defendant's motion.

```
                         Respectfully submitted,
                         MICHAEL J. SULLIVAN
                         United States Attorney

                 BY:     /s/Donald L. Cabell
                         Donald L. Cabell
                         Assistant U.S. Attorney
                         One Courthouse Way, Suite 9200
                         Boston, MA 02210
                         (617) 748-3105
```