UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 04-10196-GAO

UNITED STATES OF AMERICA

v.

JOHN FORTES,
Defendant.

OPINION AND ORDER
September 30, 2016

O'TOOLE, D.J.

Petitioner John Fortes moves to set aside his conviction and vacate his guilty plea pursuant to 28 U.S.C. § 2255. Fortes argues that, because of notorious misconduct by former state laboratory chemists Annie Dookhan and Sonja Farak, which was unknown to him at the time he pled guilty, his guilty plea should be regarded as having been involuntary and his conviction should be vacated. For the reasons stated below, Fortes's motion to vacate is denied.

**I.     Factual Background**

   A.     Investigation of Fortes

In 2004, a joint task force comprised of federal and state agents conducted an investigation into alleged criminal activity in New Bedford, MA. During the investigation, state police and federal agents conducted a series of controlled drug buys using a cooperating witness who had known Fortes for over ten years. The government's case included the following evidence: On May 27, 2004, the cooperating witness called Fortes's cellular phone, made arrangements to purchase powder cocaine from Fortes, met Fortes at an agreed-upon location in a car registered to Fortes's girlfriend and known to officers as regularly driven by Fortes, gave Fortes the agreed-upon cash

payment, and obtained from Fortes a plastic bag containing a white power substance. The meeting took place under surveillance and was both videotaped and audiotaped. The suspected cocaine was sent to the Massachusetts Department of Public Health ("DPH") Drug Laboratory in Jamaica Plain (the "Hinton Lab") and was tested by Elisabeth O'Brien as the primary chemist and Farak as the confirming chemist. The analysis revealed that the substance was cocaine with a net weight of 28.12 grams.

On June 2, 2004, the cooperating witness again called Fortes on his cellular phone to make arrangements to purchase cocaine and ammunition from Fortes. Under surveillance by officers, the cooperating witness met Fortes at an agreed-upon location and in exchange for an agreed-upon amount of cash obtained a clear plastic bag with white powder substance, as well as another bag containing bullets. The controlled buy took place under surveillance and was both videotaped and audiotaped. The suspected cocaine was sent to the Hinton Lab for chemical analysis and, after testing by primary chemist Elisabeth O'Brien and confirming chemist Farak, was determined to be cocaine with a net weight of 25.00 grams.

On June 22, 2004, the investigating team arranged a third controlled buy between the cooperating witness and Fortes under similar circumstances. This transaction was not the subject of a criminal charge.

After conducting additional surveillance on Fortes, the government applied for and obtained a search warrant for the apartment where officers believed Fortes was living. A search of that apartment was executed on June 24, 2004, and agents seized numerous items, including cash, a digital scale, a cellular phone with the phone number the cooperating witness had called to arrange the controlled buys, two driver's licenses bearing Fortes's name and photograph, an invoice to Fortes for an oil and filter change on the vehicle observed to have been involved in the

first transaction with the cooperating witness, various firearms and ammunition, a plastic bag containing cocaine, and two plastic bags containing marijuana. Fortes was arrested during the execution of the search warrant.

    B.    <u>Annie Dookhan</u>

Dookhan's offenses are now well-known. She worked as chemist at the Hinton Lab from 2003 through 2012. In 2011, Dookhan was cited for a breach of laboratory protocol. The DPH launched an investigation which exposed an alarming pattern of lapses and irregularities at the Hinton Lab. Dookhan was ultimately indicted and pled guilty to twenty-seven criminal charges, including perjury and evidence tampering, admitting among other things that she rigged test results by contaminating negative samples with known drugs from completed tests and dry-labbing (i.e., falsely certifying she had tested drug samples when she had only given them a visual examination).

    C.    <u>Sonja Farak</u>[1]

Farak was a chemist employed by the DPH from July 2003 through July 2012 and by the Massachusetts State Police from July 2012 through January 2013. She worked at the Hinton Lab during her first year of employment and subsequently worked at a state drug laboratory in Amherst (the "Amherst Lab"). According to testimony from the grand jury investigation conducted by the Attorney General's Office, Farak was a recreational drug user prior to working with the DPH. After working at the Amherst Lab for about one year, Farak began to consume laboratory reference standards, known substances that the Amherst Lab had purchased from drug or chemical companies for use in the laboratory.[2] Starting in about 2009, Farak began using drugs from police-submitted samples at the Amherst Lab. Farak also performed work under the influence of a variety

---

[1] The details about Farak are gleaned from the AG Report. Although Fortes filed the report under seal pursuant to a protective order, it is publicly available online.

[2] Farak testified before a grand jury that she did not have access to standards at the Hinton Lab.

of narcotics, took and manipulated samples from other chemists, manufactured her own crack cocaine at the Amherst Lab, and manipulated the computer inventory used to track drugs in the Amherst Lab. Farak's malfeasance finally emerged in 2013 after a chemist noticed drug samples assigned to Farak were missing. An investigation led to the discovery of drug paraphernalia and controlled substances in Farak's work station and vehicle. Farak was arrested in 2013 and pled guilty in 2014 to tampering with evidence, larceny of controlled substances from a dispensary, and unlawful possession of a controlled substance.

## **II.**     **Procedural Background**

Fortes was indicted in July 2004 on two counts of distribution of between 25 and 50 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts 1 and 2) and one count of being a felon in possession of ammunition in violation of 19 U.S.C. § 922(g)(1) (Count 3). After the Court denied a motion to suppress brought by the defendant, the Court scheduled a change of plea hearing for May 16, 2008. The hearing was continued several times for various reasons, including attorney scheduling conflicts, a pending motion to vacate a state court conviction that could have materially affected Fortes's federal sentence, a change in defense counsel, and uncertainty about the disposition of Count 3 of the indictment. At a hearing on June 29, 2006, Fortes proposed to enter a guilty plea to the two drug counts, but to reserve a decision about whether to plead guilty to the ammunition count. After a colloquy, the Court declined to accept the guilty plea as to the drug counts because Fortes indicated that his willingness to plead guilty was dependent on the unresolved issue concerning the ammunition count. (Clerk's Note, June 29, 2006 ("Court rejects plea until resolution of Count III."); Tr. of Change of Plea Hr'g 17-20, June 29, 2006 (dkt. no. 69).)

Eventually trial was set for July 9, 2007. The government's preliminary exhibit list, filed June 27, 2007, listed the video and audio tapes of the alleged drug transactions, in addition to the state lab drug reports. (Gov't's Prelim. Ex. List 1 (dkt. no. 58).) On June 28, 2007, the government also filed an information pursuant to 21 U.S.C. § 851 giving notice that it would seek increased punishment by reason of a drug-related criminal conviction in state court.

On July 2, 2007, Fortes pled guilty to all three counts in the indictment. Probation prepared a pre-sentence report ("PSR"). The PSR included a section describing offense conduct in some detail. Fortes did not object to the PSR's description of his offense conduct.

On November 8, 2007, the Court held a sentencing hearing and sentenced Fortes to 142 months of imprisonment on Counts 1 and 2, and 120 months imprisonment on Count 3. The sentence was slightly below the range recommended by the United States Sentencing Guidelines.

In 2013, Fortes filed his present § 2255 petition following revelations of Annie Dookhan's misconduct. The case was stayed pending issuance of the Massachusetts Inspector General's report regarding Dookhan (the "OIG Report") and, after Farak's malfeasance came to light, the case was further stayed pending issuance of the Attorney General Office's investigative report regarding Farak (the "AG Report"). The government provided Fortes the AG Report in April 2016. Fortes, represented by counsel, submitted a supplemental memorandum focusing on Farak's conduct.

Additionally and importantly, in 2014 the government had the two drug samples at issue in the case retested. The tests confirmed that the samples contained cocaine.

### III.   Discussion

Generally speaking, a "'voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" Wilkins v. United States, 754 F.3d 24, 28 (1st Cir. 2014) (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)).

However, a defendant who pled guilty may still "collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea." Ferrara v. United States, 456 F.3d 278, 289 (1st Cir. 2006) (citations omitted). To prevail on this ground, a defendant must make two showings:

> First, he must show that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea. Second, he must show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice. In mounting an inquiry into these elements, a court must consider the totality of the circumstances surrounding the plea.

Id. at 290 (internal citations omitted).

The First Circuit has reserved the question whether federal prosecutors are to be held responsible for a state lab chemist's misconduct. Wilkins, 754 F.3d at 28 (regarding Dookhan). Here, as there, that question need not be resolved. Rather, the Court addresses the second requirement under Ferrara, that is, whether any misconduct of the chemists could be determined to have influenced the defendant's decision to plead guilty. Under this inquiry, the defendant must show "'a reasonable probability that, but for [the misconduct], he would not have pleaded guilty and would have insisted on going to trial.'" Ferrara, 456 F.3d at 294 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). When, as here, the "misconduct involves newly emergent evidence not previously disclosed, the probability assessment 'will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.'" Wilkins, 754 F.3d at 28 (quoting Hill, 474 U.S. at 59). The inquiry is an objective one. Id. (citing Ferrara, 456 F.3d at 294). Although not exhaustive, relevant factors for making such determination include:

> (i) [W]hether the sequestered evidence would have detracted from the factual basis used to support the plea; (ii) whether the sequestered evidence could have been used to impeach a witness whose credibility may have been outcome-determinative; (iii) whether the sequestered evidence was cumulative of other evidence already in the defendant's possession; (iv) whether the sequestered evidence would have influenced counsel's recommendation as to the desirability of

6

accepting a particular plea bargain; and (v) whether the value of the sequestered evidence was outweighed by the benefits of entering into the plea agreement.

Ferrara, 456 F.3d at 294 (internal citations omitted).

Here, after evaluating the totality of the circumstances, this Court concludes that Fortes has failed to demonstrate a "reasonable probability" that knowledge of misconduct by Dookhan and Farak would have influenced his decision to plead guilty enough to satisfy Ferrara's materiality requirement. See id.

To begin with, the government's evidence against Fortes was strongly inculpatory. In particular, putting aside the drug analyses, there was substantial circumstantial evidence supporting a finding that the substance sold to the cooperating witness during the controlled buys was in fact cocaine. See Wilkins, 754 F.3d at 29. As described above, the uncontested description of Fortes's offense conduct in the PSR described with particularity the two controlled buys at issue. During both transactions, the cooperating witness called Fortes on his cellular phone, arranged to purchase cocaine from Fortes, met Fortes under surveillance at an agreed-upon location, handed Fortes the agreed-upon amount of cash, and obtained from Fortes a plastic bag with white powder substance. Fortes was positively identified by agents during both transactions. Additionally, agents arranged and observed a third controlled buy between Fortes and the cooperating witness. A search executed pursuant to a warrant yielded incriminating evidence, including cash, a digital scale, a cellular phone with the number the cooperating witness had used to arrange the controlled buys, Fortes's licenses, firearms and ammunition, an oil change invoice linking Fortes to the car used during the first controlled buy, and cocaine. Although Fortes claims now that the numerous continuances of his change of plea hearing suggest weaknesses in the government's case, the actual record indicates nothing of the sort.

Moreover, the misconduct by Dookhan and Farak barely touches at all upon Fortes's case. There is no indication here that Dookhan ever handled the drug evidence obtained during the controlled buys.[3] See United States v. Chin, 54 F. Supp. 3d 87, 92 (D. Mass. 2014) (dismissing § 2255 petition where there was no evidence that the drug sample "was tampered with, analyzed, or even touched by Annie Dookhan"). Farak served as the secondary, confirming chemist for the two drug samples underlying the charged drug offenses, but the Attorney General's investigation revealed that her misconduct with respect to drug samples began later after she started working at the Amherst Lab. Additionally, as the secondary chemist, she did not handle or have access to the substance in question. According to her affidavit, the primary chemist, O'Brien, retained possession of the drugs being tested from the time they were released to her until she returned them to the evidence office following completion of the testing. Farak's responsibility was limited to testing in a machine a vial O'Brien prepared containing a small amount of the substance dissolved in an appropriate solvent. Cf. United States v. Jackson, 54 F. Supp. 3d 102, 108 (D. Mass. 2014) (dismissing § 2255 petition where Dookhan was secondary chemist, noting that the OIG Report "found no evidence to support treating cases in which Dookhan confirmed another chemist's results with any increased suspicion about Dookhan's involvement").

Finally and significantly, Fortes does not contend he is actually innocent or that the substances purchased from him were not actually cocaine. Nor on this record could he. As in Wilkins, Fortes "admitted his factual guilt (including the nature of the contraband sold) in open court at the time he [made] his plea. This admission is entitled to significant (albeit not dispositive) weight when, as now, he seeks to vacate that plea through a collateral attack. And such an

---

[3] Dookhan appears to have tested the marijuana seized during the search, but Fortes was not charged with marijuana-related offenses.

admission is especially compelling because the petitioner neither attempts to explain it away nor makes any assertion of factual innocence."[4] 754 F.3d at 30 (internal citations omitted).

To assuage any lingering concerns, the government retested the drugs obtained from Fortes through the controlled buys. The results were positive for cocaine. Consequently, there is little doubt that the substance Fortes gave to the cooperating witness in exchange for cash payment was in fact cocaine. In all likelihood, had concerns about the chemists arisen prior to Fortes's plea, the government would have simply retested the substances at that time.

For the reasons stated above, Fortes has not established a reasonable probability that he would have proceeded to trial instead of pleading guilty had he known of the malfeasance of Dookhan and Farak. Although Fortes now avers that he would have insisted on going to trial, the

---

[4] Counsel read a statement from Fortes at the sentencing hearing which touched upon Fortes's decision to plead guilty:

> Your Honor, I stand before this Court and my family today taking full responsibility for my actions. [During] these last three and a half years I have done a great deal of soul-searching because I want to change, your Honor. I want to be the son my mother deserves . . . I know the reason why I stand here before the Court today is because I am the one who made bad choices and decisions. I am the one who failed my family and community. In realizing this, your Honor, it is killing me every day. . . . While I've lived my life in a way I'm not proud of, I want to make sure my children do not follow me down this path. . . . I now have a deep understanding of the connection between my illegal conduct and its impact on others, how it destroys lives and families and takes away everything until you have nothing else. I've watched how my actions have caused my family and myself so much pain, especially my mother. . . . And I recognize that I'm responsible for that pain. Not the government, not the Court, not the New Bedford police, and not even the cooperating informant. I am responsible. Your Honor, part of pleading guilty in this case was to start making the right choices, starting to restrain myself from all the stress and negativity. . . . I have to change so my children will have a responsible father when I get out so I deserve their self-respect [sic]. I have to change because I'm not proud of who I was once . . . was.

(Tr. of Disposition 19-22, Nov. 8, 2007 (dkt. no. 78); see also Mot. for Sentence Variance 11-12 (dkt. no. 68) (under seal) (noting that Fortes had been "willing to accept responsibility for his conduct since at least June 2006" and that his decision to plead guilty under the circumstances "illustrate[d] how deep Mr. Fortes['s] desire to change and rehabilitate himself is").)

9

Court "does not believe that there is a reasonable probability that [the] defendant would have forgone a guilty plea . . . and taken his chances before a jury in light of the strength of the government's evidence" and the remote involvement of the chemists at issue. See United States v. Wilkins, 943 F. Supp. 2d 248, 257-58 (D. Mass. 2013); see also United States v. Robinson, No. 08-10234-RGS, 2015 WL 5074340, at *3 n.5 (D. Mass. Aug. 26, 2015).

Fortes's Motion to Vacate (dkt. no. 84) is therefore DENIED.

Finally, because the defendant has not "made a substantial showing of the denial of a constitutional right" under the Wilkins and Ferrara cases, see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge